Filed 9/12/16  P. v. Ruiz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ABRAHAM RUIZ,<br><br>    Defendant and Appellant. | G052055<br><br>(Super. Ct. No. 14HF2170)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kimberly A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Abraham Ruiz of felony vandalism and attempted petty theft. On appeal, Ruiz argues insufficient evidence supports his felony vandalism conviction and he was only guilty of misdemeanor vandalism. We disagree and affirm the judgment.

FACTS

One evening, Ruiz vandalized and attempted to steal copper piping from a strip mall's roof. A shop owner heard footsteps on the roof and called the police. Police found Ruiz on the roof, wearing a backpack that contained several construction tools, including a pipe cutter and saw. Ruiz did not possess any copper piping. After helping detain Ruiz, Deputy Ryan Hoopii took pictures of the damage to several air conditioning units on the rooftop.

About one week later, a service technician from HVAC Mechanical, a commercial air conditioning company, reviewed the total damage. The service technician relayed the repair information, such as the size and lengths of the copper needed, to his service manager, Nick Hooper. Hooper's duties included managing the service department, dispatching calls, and writing repair quotes. Hooper said he used information from "one of [the copper pipe] distributors" to determine what "rate copper was going for during that week" to establish the cost to replace the copper needed for repairing the damaged air conditioning units. The price quote included the cost to replace P-traps and copper drain pipes for five air conditioning units, requiring the purchase and installation of 140 feet of copper. The material cost for 140 feet of copper piping was $769 (approximately $5.49 per foot). The labor cost to perform the repairs to five air conditioning units was $1,024.

At trial, Hoopii stated he did not see anyone else on the roof after Ruiz was detained. He saw there were "two air condition units that had cut pipes next to" them and "another two that had the same kind of damage" on the roof. He took photographs of three damaged air conditioning units. Hoopii testified there were eight cut copper pipes

2

next to the first air conditioning unit. These pipes measured four feet long and the ends "were crimped." When viewing the pieces up close, they appeared freshly cut because he noticed the "shiny copper tone" on the ends of the crimped and severed pipes appeared "dramatically different" than the coloring of pipe in between the ends. He explained there were additional pieces of freshly cut copper pipe not included in the eight pieces he measured.

Hoopii stated the second air conditioning unit had a "pipe coming out of the air condition[ing] unit" and a couple pipes on the roof near the air conditioning unit. The ends of both these pipes were "described as being crimped." He testified the pipe coming out of the second air conditioning unit had water collected both on and below the pipe. Hoopii noted the third air conditioning unit had an open pipe and "another pipe next to it wrapped in tape" with water collected below the pipe but not on it.

In February 2015, the jury convicted Ruiz of felony vandalism in violation of Penal Code section 594, subdivisions (a) and (b)(1),[1] and attempted petty theft in violation of sections 484, subdivision (a), and 664, subdivision (b). The trial court sentenced Ruiz to two years and eight months in prison.

## DISCUSSION

Ruiz argues there was insufficient evidence to prove he caused at least $400 of damage to establish a felony vandalism conviction because (1) there was no evidence he removed any piping or cut more than 32 feet of piping, (2) some of the piping covered with black tape was previously damaged and repaired, therefore, there was no evidence he caused damage to all five air conditioning units, (3) Hooper's price quote was not reliable evidence, and (4) no repairs were made in the time between the date the quote was generated and the date of Hooper's testimony. We conclude these contentions lack merit.

---

[1] All further statutory references are to the Penal Code.

*A. Standard of Review*

"To assess the evidence's sufficiency, we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.] [¶] The same standard governs in cases where the prosecution relies primarily on circumstantial evidence. [Citation.] . . . Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

*B. Relevant Legal Authority*

"Section 594 provides in pertinent part that '[e]very person who maliciously commits any of the following acts with respect to any real or personal property not his or her own . . . is guilty of vandalism: [¶] (1) Defaces with graffiti or other inscribed materials. [¶] (2) Damages. [¶] (3) Destroys.' It further provides that if the damages from the vandalism are $400 or more, the crime is punishable as a felony. If

4

the damage is less than $400, the crime is punishable as a misdemeanor.  [Citations.]"
(*People v. Carrasco* (2012) 209 Cal.App.4th 715, 719 (*Carrasco*); § 594, subd. (b).)

The Attorney General contends, and Ruiz does not dispute that although the vandalism statute does not articulate the method by which a jury should calculate the damages, courts regularly look to the cost of repair as a measure.  The Attorney General cites to *People v. Stanley* (2012) 54 Cal.4th 734, 737, which states the trial court may award *a victim* of vandalism "'replacement cost of like property, *or* actual cost of repairing the property when repair is possible.'"  We find *Carrasco, supra,* 209 Cal.App.4th 715, instructive.  That case held, "damages from multiple incidents of vandalism—even directed at the property of more than a single victim—may be aggregated and charged as part of a single [felony] offense, where the facts show that the incidents of vandalism were not "'separate and distinct,'" but were committed "'pursuant to one intention, one general impulse, and one plan.'"  [Citation.]"  (*Id.* at pp. 720-721.)  In applying this legal rule, the *Carrasco* court looked to the cost of repair not just the replacement value of the windows defendant damaged.  (*Id.* at 724.)  The jury heard testimony that "it cost $265 to repair the house window, and $382 to repair the car windows" to conclude "appellant's vandalism caused damages of $400 or more."  (*Ibid.*)

*C. Analysis*

We begin with Ruiz's contention he did not remove the piping from the roof top and therefore a price quote containing the cost to replace the piping was not sufficient evidence his vandalism caused over $400 in damages.  He misconstrues the evidence.  The price quote indicated the pipes had been stolen but did not specify whether they had been physically removed from the roof or were cut-away from the air conditioning units and the pipes could not be reused.  The price quote indicates five air conditioning units were damaged and they all required new copper piping to be repaired.  Ruiz is responsible for the cost to repair the damage caused by his vandalism.  (*Carrasco, supra,* 209 Cal.App.4th at p. 724.)

5

We turn next to Ruiz's contention there is no evidence he cut copper piping from all five air conditioning units because some of the piping had been repaired with duct tape before he went on the roof. In making this argument, Ruiz asserts there is no evidence he cut more than the 32 feet of copper piping that Hoopii photographed and measured. We can treat this argument as an admission Ruiz caused at least $175 in damages. Using Hooper's price quote to determine the material cost of copper piping per foot at the relevant time, 32 feet of copper totals approximately $175.

Accordingly, to uphold his felony vandalism conviction, there need only be evidence Ruiz caused an additional $225 worth of damage ($400 − $175 = $225). Evidence supporting additional damage is the price quote of the labor costs to repair the vandalized units, Hoopii's photographs, and testimony there were pieces of newly crimped copper pipe lying near two freshly damaged air conditioning units. While we agree with Ruiz's contention there was insufficient evidence to establish he caused damage to all five air conditioning units, there was no reason to question Hoopii's observations and photographs proving at least two units were damaged by Ruiz's vandalism.

There is sufficient evidence to support the jury's verdict there was over $400 in damages in the cost to repair at least two air conditioning units with 32 feet of copper piping (at a minimum). Although the price quote reflects more damages than Ruiz caused—material costs of 140 feet of copper pipe and labor costs to repair five air conditioning units—the jury could calculate roughly the material and labor costs caused by Ruiz's vandalism of two of the five air conditioning units.

We reject Ruiz's attempt to discredit Hooper as a witness for his failure to inspect the roof after the incident and his overly-inclusive price quote that included items beyond the damage he caused. First, Hooper's duty, unlike his service technician's, was not to observe damage but to use the information relayed to him by the service technician to generate a repair price quote. Second, we do not hold Ruiz accountable for all the

6

damage in the price quote, only the recent vandalism damage noted by Hoopii. Moreover, such facts go to the weight to be given to the witness' testimony; "[w]e neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 638.) The jury made its own determination that Hooper's testimony was more reliable and credible than not. "We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.]" (*Id.* at pp. 638-639.)

Lastly, there is no requirement that repairs be made, only that damage be caused. Thus, the fact that no repairs were made in the six month lapse in time between the date the quote was generated and the date of Hooper's testimony is irrelevant.

Ruiz improperly asks this court to reweigh the evidence and cast that evidence in the light most favorable to himself. In consideration of the contents in Ruiz's backpack, photographic evidence of the roof taken on the day of the incident, Hoopii's testimony, and Hooper's price quote, sufficient evidence exists to conclude that Ruiz caused at least $400 of damage and was guilty of felony vandalism.

DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


THOMPSON, J.

7